WEBB *v.* STATE OF INDIANA.

[No. 29,432. Filed February 25, 1957. Rehearing denied April 5, 1957.]

---

20. Acts 1881 (Spec. Sess.), ch. 38, §649, p. 240, being Burns' §2-3234 (1946 Replacement).

*Grimm & Grimm, Howard S. Grimm, Howard S. Grimm, Jr.,* of Auburn, *G. Kenneth Hubbard,* and *Gerald Deller* (of counsel), of Angola, for appellant.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling,* Deputy Attorney General, for appellee.

ACHOR, C. J.—This is an appeal from a conviction of voluntary manslaughter. Motion for a new trial was

overruled. Appellant argues as cause for reversal that: (1) The verdict was not sustained by sufficient evidence, and (2) the court erred in overruling his objection to instruction numbered 11.

The indictment charged "That James E. Webb, on the 16th day of May, 1955, did then and there unlawfully, feloniously . . . strike, beat and kick Mary Annabelle Webb . . . from which said mortal wounds and injuries the said Mary Annabelle Webb . . . died on the 16th day of May, 1955."

We first consider the sufficiency of the evidence to sustain the verdict. Appellant and decedent were husband and wife. On the night of May 6, 1955, they had taken their two daughters, ages 15 and 11 respectively, and a third girl, aged 15, to a movie. While the girls were at the show appellant and deceased, with their three smaller children, rode around as they often had done before. During the ride appellant stopped at a liquor store and bought six cans of beer and a half pint of whiskey. During the time they were riding around appellant drank two cans of beer and half of the whiskey and deceased drank one can of beer. They arrived at their home around 10:00 o'clock and, shortly thereafter, one of their daughters called to say they were out of the theatre and deceased drove alone and got the three girls and brought them home. After the three girls had gone upstairs to bed they heard noises downstairs that sounded like scuffling, furniture being shoved about, the crash of a bathroom mirror and a fist hitting the face. They heard deceased say "Jim, quit it," or "stop it." The next morning decedent was marked with bruises but, when questioned about it, she reportedly said that she "fell out of a car" but refused to state whose car or under what circumstances. The deceased was taken to the hospital in Auburn on May 8, in a dazed and weakened condition. There she told a doctor

she didn't know how she acquired the bruises. On May 12, the deceased was released from the hospital and, on May 15, she was readmitted. Later, on the same day, she was rushed to a Fort Wayne hospital, in a semi-conscious condition, to undergo immediate surgery. When readmitted to the hospital in Auburn, deceased had bruises on her arms and legs which were not there when previously admitted. She had attributed some of these to her having fallen out of the hospital bed during her previous confinement. She died on the morning of May 16, following surgery. Her death was attributed to a blood clot on the brain from a blow, or blows, to the head.

There were numerous accounts in evidence of appellant's beating his wife and of the bruises and marks left from these assaults. The most serious of these assaults took place the latter part of April, 1955, when appellant was seen hitting deceased with his fist and pounding her head against the floor.

However, it is the position of appellant that the evidence is not sufficient to sustain the conviction in two particulars. First, it is the position of appellant that the evidence regarding the altercation on May 6 was insufficient to sustain the verdict, and that there is no evidence which connects prior assaults with the injury from which decedent died. However, the neurosurgeon, who performed the operation, testified that the blood clot or massive hemorrhage had been present at least a week and not more than a month, and that the concussion could not have taken place after May 11. This evidence clearly connected the beating which took place the latter part of April to the death, and it was therefore proper for the jury to consider the evidence of the blows inflicted on that date as causing or contributing to the death of the decedent.

Under the circumstances, it was not necessary that

the state prove the exact blow or blows which inflicted the wound or wounds from which decedent died, ■ or the exact date when such mortal wounds were inflicted. It is sufficient that the accused was clearly apprised of the charge placed against him, that it was within the statute of limitations, and the proof was sufficient to sustain a verdict of guilty, pursuant to the charge. §9-1106, Burns' 1956 Repl. (Acts 1905, ch. 169, §175, p. 584;[1] *Hutchinson* v. *The State* (1878), 62 Ind. 556; *Hunt* v. *State* (1927), 199 Ind. 550, 159 N. E. 149.

Secondly, appellant contends that the evidence admits to the fact of injuries otherwise suffered by decedent, and does not exclude the possibility that she may have died as a result of such injuries. Particularly, appellant relies upon testimony that decedent, herself, attributed her injuries to the fact that she "fell out of a car" and "fell out of bed." However, this was evidence to which the jury was not only entitled, but obliged, to consider and weigh along with all the other evidence. With regard to decedent falling out of a car, that purportedly happened on the night of May 6. However, the jury also had before it the fact that when decedent returned from getting the girls at the theatre on the night of May 6, she bore no apparent marks or bruises other than discoloration around her eyes which was the result of a previous assault by appellant, and there is no evidence that she was in an automobile again before she was taken to the hospital on May 8. Also, the evidence discloses that decedent, when further questioned, refused to give any information regarding the incident

---

1. "The precise time of the commission of an offense need not be stated in the indictment or affidavit, but it is sufficient if shown to have been within the statute of limitations, except where the time is an indispensable ingredient in the offense; and when, with reference to a particular day, the words 'on or about' are used, the last two words 'or about' shall be regarded as mere surplusage." §9-1106, Burns' 1956 Repl.

and that, on entering the hospital, she told the doctor she did not know what had caused her injuries.

Also, regarding the related incident of decedent's falling out of the hospital bed, here again there were no witnesses to the incident, and there was no record of such an occurance on the hospital chart, which record it would have been the duty of the attending nurse to make, had such an accident occurred. Furthermore, the jury had a right to consider first, whether the decedent might reasonably have suffered the numerous bruises to her head, many of which were to the top of her head, from falling out of bed and, secondly, the relative probability that a blow to her head, so sustained, would have been of sufficient impact to cause death.

It is apparent that the jury either disbelieved the witnesses who testified regarding the explanations which decedent made of her injuries or concluded that such explanations, if made by decedent, were made either out of fear of her husband or out of a desire to shield him from the penalty of his acts. This the jury had a right to do.

We are aware that the statements attributed to decedent were, in many respects, incoherent and conflicting. However, after considering the voluminous record in this case, we cannot say that the jury was without substantial evidence with which to sustain the verdict. See: Flanagan, Wiltrout & Hamilton's Indiana Trial & Appellate Practice, §2786, p. 367.

As to appellant's second assigned cause for reversal, that the court erred in giving instruction 11 over his objection, appellant's objection to said instruction was too general to raise any question for the trial court to consider and, therefore, it does not present any issue to this court on appeal. Rule 1-7 Supreme Court.

Judgment is therefore affirmed.

Arterburn, Bobbitt, Emmert and Landis, JJ., concur.

NOTE.—Reported in 140 N. E. 2d 396.